No. 21-55241

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

STILLWATER LTD, a United Kingdom Company,
*Plaintiff—Counter-Claim-Defendant—Appellant,*

*v.*

ANTONIA BASILOTTA,
*Defendant—Counter-Claimant—Appellee.*

---

## RESPONSIVE BRIEF OF
## DEFENDANT-COUNTERCLAIMANT-APPELLEE ANTONIA
## BASILOTTA

---

On Appeal from The United States District Court for The
Central District of California, Los Angeles
Case No. 2:16-cv-01895-SK
Honorable Steve Kim

---

Mark S. Lee
Rimon, P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
(310) 361-5776

*Attorneys for Defendant-Counterclaimant-Appellee*
Antonia Basilotta

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................... 1

STANDARD OF REVIEW ..................................................................... 1

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................... 3

    A.    Toni Basil and Her Creation of "Mickey." .............................. 3

        1.    Basil Enters into Agreements with Radialchoice and Creates "Mickey" and Other Sound Recordings. ................................................................... 3

        2.    Basil Creates "Mickey" and other Sound Recordings Pursuant to the Radialchoice Agreements. ................................................................. 4

    B.    RadialChoice Claims Sole Copyright Ownership, on a Work Made for Hire Basis, of the "Mickey" Sound Recordings. ......................................................................... 4

    C.    Basil Serves a Notice of Termination to Retrieve Rights. ..................................................................................... 5

    D.    Stillwater Files Suit Against Basil in 2016 and Eventually Claims, for the First Time, to be Basil's Joint Author. ............................................................................ 6

    E.    The Trial Court Decides Stillwater's Joint Authorship Claim Following a Bench Trial. ............................................. 6

SUMMARY OF ARGUMENT ............................................................... 16

ARGUMENT .......................................................................................... 17

    A.    The District Court Correctly Found That Radialchoice was Not a Joint Author of the "Mickey" Sound Recordings. ......................................................................... 17

i

**TABLE OF CONTENTS CONT'D**

**Page**

       1.    The District Court's Factual Findings Were Not Clearly Erroneous. ....................................................... 17

       2.    The District Court's Rulings on Mixed Questions of Law and Fact Were Not Clearly Erroneous. .......... 18

       3.    The District Court's Legal Conclusions Are Correct. ............................................................................ 22

  B.    Stillwater's Argument that Mathieson's Status as a Producer Created a Presumption of Joint Authorship Lacks Merit as a Matter of Law. ......................................... 26

  C.    The Statute of Limitations Bars Stillwater's Joint Authorship Claim. ................................................................ 34

CONCLUSION ........................................................................ 36

# TABLE OF AUTHORITIES

## CASES

*Aalmuhammed v. Lee*,
    202 F. 3d 1227 (9th Cir. 2000) ...................................................passim

*ABS Entm't v. CBS Corp.*,
    908 F. 3d 405 (9th Cir. 2018) .............................................................31

*Ashton-Tate Corp. v. Ross*,
    728 F. Supp. 597,601, aff'd, 916 F.2d 516 (9th Cir. 1990)...............................26

*Atel Fin. Corp. v. Quaker Coal Co.*,
    321 F. 3d 924 (9th Cir. 2003.) .............................................................35

*Childress v. Taylor*,
    945 F.2d 500 (2d Cir. 1991) .........................................................30, 31

*Consumer Health Information Corp. v. Amylin Pharmaceuticals, Inc.*,
    819 F. 3d 992 (7th Cir. 2016) ......................................................35, 36

*Creative Dream Prods., LLC v. Houston*,
    2015 WL 12731915 (C.D. Cal. April 2, 2015).................................................28

*Mapp v. UMG Recordings, Inc.*,
    208 F. Supp. 3d 776 (M.D. La. 2018)....................................................33

*Matthews v. Chevron Corp.*,
    362 F. 3d 1172 (9th Cir. 2004) ...........................................................2

*Morrill v. the Smashing Pumpkins*,
    157 F. Supp. 1120 (C.D. Cal. 2001) ..............................................31, 33

*OneBeacon Ins. Co. v. Haas Indus., Inc.*,
    634 F.3d 1092 (9th Cir. 2011) ............................................................1

*Reinsdorf v. Sketchers*,
    922 F.Supp.2d 866 (C.D. Cal. 2013) ...................................................25

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
    531 F. 3d 962 (9th Cir. 2008) .....................................................22, 24, 26

# TABLE OF AUTHORITIES CONT'D

## CASES

*S.O.S. Inc. v. Payday Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ............................................................26

*Seven Arts Filmed Entertainment Limited v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ............................................................35

*Staggers v. Real Authentic Sound*,
  77 F. Supp. 2d 57 (D.D.C. 1999).................................................26, 32

*Systems XIX, Inc. v. Parker*,
  30 F. Supp. 2d 1225 (N.D. Cal. 1998)................................................32

*Thomson v. Larson*,
  147 F.3d 195 (2d Cir. 1998) .........................................................20, 23

*Zuill v. Shanahan*,
  80 F.3d 1366(9th Cir. 1996) ...............................................................35

## STATUTES

17 U.S.C. § 102(a) ...............................................................................25

17 U.S.C.§ 203 of the Copyright Act .....................................................1

17 U.S.C. § 203(a) .................................................................................5

17 U.S.C. § 203(b)(1)...........................................................................16

## OTHER AUTHORITIES

1 *Nimmer on Copyright* § 2.20[A][3] (2001) .........................................29

Thomson Reuters ..................................................................................30

*2 Patry on Copyright* § 5:83 ................................................................30

iv

**INTRODUCTION**

Appellee Antonia Basilotta, professionally known as Toni Basil ("Basil" or "Appellee"), served a notice of termination to retrieve rights in sound recordings of the hit song "Mickey" as permitted by 17 U.S.C.§ 203 of the Copyright Act.  To blunt the impact of that notice, Appellant filed suit below and eventually claimed, for the first time after more than 34 years, that its predecessor was a joint author of those sound recordings.

The district court found Appellant's predecessor was not a joint author following a bench trial.  Appellant now seeks to reverse the trial court's ruling, even though Appellant introduced no agreement that supported its belated "joint authorship" claim, no witness with personal knowledge of the sound recordings' creation supported the claim, and its predecessor's 1982 copyright registrations refute the claim.  Appellant instead seeks to substitute a "presumption" for evidence it does not have to establish joint authorship.

Appellant's arguments should be rejected, and the trial court's findings and judgment affirmed, for the reasons described below.

**STANDARD OF REVIEW**

As the trier of fact at trial, the district court's factual findings are reviewed for clear error, while its legal conclusions are reviewed *de novo*.  *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011).

This Court has previously stated that mixed questions of law and fact are also reviewed *de novo*, see *One Beacon Ins. Co., supra*; *Matthews v. Chevron Corp.*, 362 F. 3d 1172, 1180 (9th Cir. 2004). However, the Supreme Court recently clarified that "the standard of review for a mixed question [of law and fact] all depends—on whether answering it entails primarily legal or factual work." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Management,* --U.S.--, 138 St. Ct. 960. 967, 200 L. Ed. 2d 218 (2018). When "mixed questions immerse courts in case-specific factual issues-compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address what we have… called 'multifarious, fleeting, special, narrow facts[,]…' appellate courts should usually review a decision with deference[,]"… "subject only to review for clear error." Id., 138 S. Ct. at 967, 969.

In light of the fact-intensive nature of the mixed questions decided by the trial court below, this Court should apply a "clear error" standard when evaluating them based on this Supreme Court guidance.

## STATEMENT OF ISSUES

1.     Whether the district court committed clear error when it found Appellant did not prove by a preponderance of evidence that one of its predecessor's sound recording producers was a joint author of the sound recordings

2

Appellee retrieved pursuant to the "notice of termination" provisions of the Copyright Act.

2.      Whether status as a sound recording producer is enough to presume joint authorship when there is insufficient evidence to prove it under this Court's "joint authorship" legal standards.

3.      Whether Appellant's claim to joint authorship of the sound recordings is barred by the Copyright Act's three-year statute of limitations.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Toni Basil and Her Creation of "Mickey."

#### 1.    *Basil Enters into Agreements with Radialchoice and Creates "Mickey" and Other Sound Recordings.*

In 1979, Basil was a successful singer, dancer and choreographer who had worked with David Bowie, Tina Turner, Bette Midler, and other prominent musical artists as a show co-director and/or choreographer. She also had released a single for A&M Records in 1967, sang and danced on "Saturday Night Live" in the mid-1970s, and created and performed a "Folies Bizarre" live musical show at the Fox Venice Theatre that was recorded and released by Warner Bros. as a live album in 1976. (2 Excerpts of Record ["ER"], 2-140-143; Supplemental Excerpts of Record ["SER"] -26-28.)

Radialchoice, Ltd. ("Radialchoice") principal Simon Lait ("Lait") first approached Basil about doing such work for Betty Davis in 1979. (2-ER-153,

SER-29-31.) Basil declined. (Id.) Lait then decided Basil was the sort of artist he was looking for, and signed Basil to a recording contract. (2-ER-53,54.) Beginning in 1979 and continuing through 1982, Basil entered into a series of recording agreements with Radialchoice pursuant to which "Basil's copyright interests in the [sound recordings] were granted and transferred to Radialchoice." (1-ER-3.)

### 2. *Basil Creates "Mickey" and other Sound Recordings Pursuant to the Radialchoice Agreements.*

Basil selected and recorded three songs pursuant to a 1979 Agreement (1-ER-7), then pursuant to a second 1980 Agreement selected and recorded more songs that were combined with the first three into a record album called *Word of Mouth*. (1-ER-7,8.) Basil created the hit song "Mickey" in 1980 for inclusion in that album, and all of the presently disputed "Mickey" sound recordings are included in it. (1-ER-9.)

### B. RadialChoice Claims Sole Copyright Ownership, on a Work Made for Hire Basis, of the "Mickey" Sound Recordings.

Beginning in 1982, Radialchoice or its successors registered a series of "Mickey"-related sound recordings with the Copyright Office as follows:

- "Mickey Single." U.S. Copyright Registration No. SR0000041440, registered on August 13, 1982. This registration covers two tracks, including one "Mickey" sound recording.

4

- *Word of Mouth.* U.S. Copyright Registration No. SR0000038729, registered on September 27, 1982. This registration covers ten tracks, including one "Mickey" sound recording.

- *The Best of Toni Basil.* U.S. Copyright Registration No. SR0000618344, registered on November 4, 2008. "This registration covers 15 tracks, including two versions of "Mickey." (1-ER-11, 24.)[1]

Radialchoice claimed to be the author and owner of all of the above-registered works as the "Employer for hire of Toni Basil." (1-ER- 11; 2-ER-73,74, 100; 2-ER-293, 297.) No other person was mentioned as contributing authorship to those sound recordings, on a "work for hire" basis or otherwise. (*Id*.)

Radialchoice's copyright ownership of the above-described sound recordings was eventually transferred to Appellant Stillwater through a series of written and oral assignments. (1-ER-3.)

**C.     Basil Serves a Notice of Termination to Retrieve Rights.**

Basil served a notice of termination for all of the sound recordings described above pursuant to 17 U.S.C. § 203(a) on or about March 20, 2013. The notice stated that copyright in the above-described sound recordings would revert to Basil as of June 11, 2016. (1-ER-4; 2-ER-305-312.)

---

[1] Radialchoice also registered two derivative versions of "Mickey" that the trial court ruled remained with Stillwater (1 ER 13):

"Mickey - Spanish Version." U.S. Copyright Registration No. SR0000041439, registered on December 22, 1982; and

"Mickey - Special Club Mix." U.S. Copyright Registration No. SR0000041392, registered on December 22, 1982.

That ruling is not a subject of this appeal.

5

**D.** **Stillwater Files Suit Against Basil in 2016 and Eventually Claims, for the First Time, to be Basil's Joint Author.**

Stillwater filed suit for declaratory relief on March 18, 2016. Though its original complaint sought a declaration that Basil's notice of termination was invalid because the sound recordings were works made for hire (SER-3-22), Stillwater abandoned that claim below and instead argued, as it does on appeal, that it is a joint author of 50% of the "Micky" sound recordings at issue, thereby reducing by 50% the sound recording copyrights that reverted to Basil. (1-ER-3-4; Appellant's Opening Brief ["AOB"] 2-3, 32-33.)

**E.** **The Trial Court Decides Stillwater's Joint Authorship Claim Following a Bench Trial.**

Following pretrial proceedings in which, *inter alia*, Stillwater stipulated that the sound recordings created pursuant to Radialchoice's agreements with Basil "were not created as 'works for hire,' …there was no work-for-hire agreement agreement between Radialchoice and Basil…and …Basil was never a Radialchoice employee" (1-ER-5), Stillwater's claim to joint authorship of the "Mickey" sound recordings was tried to the court in December 2019. (1-ER-3.)

Two witnesses testified at trial: Lait, who signed Toni Basil to the Radialchoice recording agreements, and Basil. (1-ER-4.) The relevant agreements, images of the front and back of the relevant album cover, copyright

6

registrations for the "Mickey" sound recordings, and Basil's notice of termination were also placed in evidence.  (1-ER-3.)

At trial, Lait testified that he signed Basil to the Radialchoice agreements, and that the agreements gave Basil artistic control over the recording but allowed Radialchoice to force her to redo them if it exercised its contractual approval rights (2-ER-102, 103, 181 [1979 Recording Agreement ¶ 4(b)]).  He testified that Radialchoice financed the recordings, that Radialchoice and Basil agreed that Greg Mathieson ("Mathieson") could produce the recordings, and that Lait saw Mathieson "carry out the duties of a record producer" in the recording sessions. (1-ER-9; 2-ER-53,54, 62-64, 77, and 108.)  Lait admitted that Basil made a number of positive additions to the "Mickey" music composition, including the cheerleading chant and change of name from "Kitty" to "Mickey." (2-ER-77.) He admitted that she performed "Mickey," and contributed to the mixing of the "Mickey" sound recordings.  (2-ER-78,79.)

Lait also admitted that Radialchoice's recording agreements with Basil did not anticipate a joint work between Basil and someone else, that he was unaware of any joint authorship agreement between Basil and Mathieson, and that Mathieson's name did not appear on Radialchoice's "Mickey" copyright registrations.  (2-ER-99-100, 115-117.) In fact, Lait testified that "shared authorship between multiple parties did not exist at the time these recordings were created."  (1-ER-12; 2-ER-

7

117.) In answer to a question about whether producer Mathieson's unidentified contributions had "audience appeal," Lait admitted that audiences would "recall that the song 'Mickey' was recorded by Toni Basil[,]" and he could not say whether any audience appeal was attributable to Mathieson. (2-ER-118-120.)

Basil testified that when she signed with Lait at Radialchoice, "I made sure I had artistic control. Of course. Because I was doing everything from inspiration from …my Fox Venice show, and…he [Lait] was just starting a label. So I would not give them artistic control." (SER-31.) She further testified that she had final say over the sound recordings; that her creative role as the solo artist on those sound recordings was "everything;" that she had a vision of what the songs would sound like after they were recorded that she sought to achieve, and that she told it to the producers; and that she supervised, masterminded and approved all of the recordings' mixes before they were mastered and finished. (2-ER-122, 129, 131, 134, 137-9, 141, 148, 154-155, and 171.) She testified that she was at every recording session, that the sound recordings were her concept, blood, and creation, that the producers did not provide creative input into them, and that she both personally mixed the recorded tapes and approved others' work on the mixes of the sound recordings for mastering. (2-ER-123, 149, and 175.)

Basil further testified that she chose the key and tempo of the songs being recorded, and that she recorded all of the lead vocals herself. (2-ER-130.) She

auditioned, selected and had the right to hire and fire the instrumental musicians who performed on the recordings.  (2-ER-129, 133-134.) Those musicians put down tracks that Ms. Basil had already decided upon.  (2-ER-176.)

Basil testified that neither of the two producers she worked with on the sound recordings, Mathieson and Trevor Veitch ("Veitch"), had ever acted as producers before.  (2-ER-122, 134.)  Ms. Basil told the two producers what her vision for the songs was and told the musicians and producers how she wanted the music recorded.  (2-ER-148,149.) She oversaw the recordings of the songs with the producers, and believed the producers simply observed others recording the musicians' performances.  (2-ER-122, 148.)  She interacted with the producers during this process, but it wasn't a "give and take" in which she compromised her artistic vision.  Instead, Basil would talk out her ideas, they would give her feedback, Basil would decide what would be done, and Basil did what she wanted to do.  (2-ER-149.)

Basil testified she created the "Mickey" sound recordings.  (2-ER-123.) In addition, Basil said she originated the "cheerleading"-themed claps and chants that included were in the "Mickey" sound recordings.  She had been a cheerleader in high school and thought those claps and chants would make a good record.  She had been looking for a song on which to put those elements.  (2-ER-123-124.) She talked to producer Mathieson about writing a cheerleading song, and began to

think that a song called "Kitty" could be made into the chant and cheerleading song she envisioned.  (2-ER-126.)

Though at first the producers did not understand her vision, after she took them to Dorsey High School to observe cheerleading, they understood that they had to include chant and cheerleading elements in "Kitty," and they began to facilitate her artistic vision.  (2-ER-127,128.)  To get the sound she believed was needed for the "Hey, Mickey, you're so fine…" chant she originated, Basil separately recorded the chant on a wooden floor with cheerleaders to replicate the sound of a basketball gym.  (2-ER-127, 128.) She then instructed the producers that those elements from the separately recorded chant had to be used not only at the beginning of the "Micky" sound recordings, but infused in the entire recording. (2-ER-128.)

Neither the two producers nor any of the musicians personally involved in "Mickey" sound recordings testified at trial, and thus no one disputed Basil's testimony concerning her artistic control and supervision of the recording sessions. (1-ER-7, 9, 10.)  None of the written agreements provided that the "Mickey" sound recordings at issue were joint works, as Lait admitted.[2] Nor did Stillwater present

---

[2] Instead, the first two agreements stated that Radialchoice owned 100% of them by assignment from Basil, while the third sought to retroactively make the "Mickey" sound recordings "works made for hire," which Stillwater repudiated before trial as described above.  Basil terminated the assignments in the

10

evidence of oral statements by Mathieson or Basil that the "Mickey" sound recordings at issue were or were intended to be joint works. (1-ER-11,12.)

Radialchoice's copyright registrations for the "Mickey" sound recordings claimed ownership as "employer for hire for Toni Basil" as described above. Those 1982 registrations did not mention producers Mathieson or Veitch, nor any of the other musicians or entities involved in creating the "Mickey" sound recordings, as individuals who contributed authorship to them. (2-ER-206-210.)

Based on the above-described testimony and evidence, or lack thereof on the part of Stillwater, the trial court made certain factual findings, including, *inter alia*, that:

- "Basil's testimony was, on balance, marginally more credible than Lait's testimony, and… so any finding below based on Basil's testimony takes that credibility assessment into account." (1-ER-5.)

- "The parties agree that the DSRs ["Mickey" sound recordings] were not created as 'works for hire,' that there was no work-for-hire agreement between Radialchoice and Basil, and that Basil was never a Radialchoice employee." (1-ER-5.)

---

Radialchoice agreements in 2013 as described above. (1-ER-11,12, ¶ 21; 2-ER-305-313.)

- Basil selected many of the instrumental musicians for the "Mickey" sound recordings and other songs, and Lait approved Basil's choices. (1-ER-7.)

- Mathieson worked as a producer on the "Mickey" sound recordings, but Basil helped him mix the master tapes. (1-ER-9 and 12.)

- Although Basil recognized that record companies, producers like Mathieson and musicians were needed to create the "Mickey" sound recordings, like any sound recordings, she considered herself the creator and "master mind" of the "Mickey" sound recordings. (1-ER-12.)

- Basil selected "Kitty" and the other songs included in the *Word of Mouth* album, and Radialchoice approved her selections. (1-ER-9.)

- The composition of the song that became "Mickey" was derived from the "Kitty" music composition. (*Id*.)

- "Basil originated and developed the 'cheerleading,' 'clapping,' and 'stomping' concepts used in" the "Mickey" sound recordings. (1-ER-12.)

12

- Basil had no intent to be a joint author with anyone else when the "Mickey" sound recordings were made.  (1-ER-12.)

- Lait did not know there was such a thing as "shared authorship" of a sound recording when the "Mickey" sound recordings were made.  (1-ER-12.)

The Court also decided many mixed questions of fact and law, including the following:

- Radiachoice could not be an "author" of the "Mickey" sound recordings for copyright purposes just because it was the record label that financed, approved, marketed, and distributed them, because none of those activities was an independently copyrightable contribution to the recordings.  (1-ER-15.)

- Lait's direction, vision, or ideas could not be a copyrightable contribution to the "Mickey" sound recordings because they were not fixed in a tangible medium of expression.  (Id.)

- Since Stillwater disavowed any claim that Basil recorded the "Mickey" sound recordings as a "work for hire," Radialchoice's

contributions could not have made the company an author independent of the work of its agents like Mathieson. (1-ER-16.)

- The legal test for joint works requires more than proof of a creative contribution to establish authorship, yet that is the most that Stillwater's evidence ultimately proved for its putative authors, including Mathieson. (1-ER-16,17.)

- Direct evidence of Mathieson's intent to be a joint author was effectively non-existent, as he never testified for Stillwater, while Basil's testimony was that she had no intent to share authorship with Mathieson or anyone else. (1-ER-17.)

- Whether Mathieson exercised enough creative control to be an author was a closer call, but still favored Basil. Other than Lait's recollection that Mathieson executed the tasks expected of music producers, Stillwater offered no specifics to undermine Basil's more detailed testimony regarding her artistic control. (1-ER-17,18.)

- Stillwater's scant evidence was not enough to prove by a preponderance of the evidence that Mathieson "superintended" the creation the creation of the "Mickey" sound recordings as the inventive mastermind. (1-ER-17,18.)

14

- Stillwater's own evidence showed that the "audience appeal" criterion for determining joint authorship favored Basil. (1-ER-19.)

- Stillwater's evidence as a whole failed to prove that either Radialchoice (as the record label) or Mathieson (as Radialchoice's hired producer) were coauthors of the ["Mickey" sound recordings]." (1-ER-19.)

- "[T]here is no credibly reliable and persuasive evidence that the musicians involved in the "Mickey" sound recordings exercised creative control, made contributions critical to the record's audience appeal, or shared an intent to be coauthors with Basil." (1-ER-20.)

- While Stillwater's evidence as a whole showed that many artists and music industry professionals contributed to the sound recordings, that was very distinct from whether all those parties mutually intended to be, and legally qualified as, coauthors of a joint work under the Copyright Act. "Stillwater's evidence on that key question was scant at best, insufficiently credible, and ultimately unpersuasive." (1-ER-21.)

Based on its findings, the district court ruled that Stillwater did not meet its burden of proving that the original "Mickey" sound recordings were joint works,

and it held that 100% of the copyright in those sound recordings reverted to Basil pursuant to her notice of termination.[3]  (1-ER-21.)

Stillwater appeals this ruling.

## SUMMARY OF ARGUMENT

The district court's factual findings that Basil personally created and supervised others' contributions to the "Mickey" sound recordings; that Basil did not intend to be a joint author and there was no evidence Mathieson intended to be one; that Radialchoice's 1982 copyright registrations identified only Basil as creating them; and that Stillwater's own "audience appeal" evidence demonstrated that "Mickey" appealed to the public because of Basil's contributions to it was not clearly erroneous, and supports the district court's  determination that the "Mickey" sound recordings were not joint works.

Stillwater's argument that it should be presumed to be a joint author of the "Mickey" sound recordings simply because Mathieson was named a producer of them, without evidence of Mathieson's actual contributions, intent to be a joint author, or audience appeal from his unspecified efforts, is contrary to the law of

---

[3] The trial court also concluded that Stillwater retained copyright ownership of the Spanish-language and other derivative "Mickey"-related sound recordings Radialchoice had registered, because such derivative works not subject to termination pursuant to 17 U.S.C. § 203(b)(1).  (1-ER-13.)  That is not an issue on appeal.

this Circuit. This Court requires that joint authorship be proved through evidence that (i) each putative joint author made an independently copyrightable contribution to the joint work, (ii) all putative authors shared the intent to be joint authors, and (iii) the "public appeal" of the work is attributable to contributions of each joint author. A legal presumption cannot replace missing evidence to establish joint authorship, especially when all evidence points to no joint authorship.

Finally, Stillwater's recent claim to joint authorship is barred by the Copyright Act's three-year statute of limitations. It did not claim joint ownership of the "Mickey" sound recordings for more than 34 years after its predecessor repudiated such a claim in its 1982 "Mickey" sound recording copyright registrations.

The district court's judgment should be affirmed for these reasons.

## ARGUMENT

### A. The District Court Correctly Found That Radialchoice was Not a Joint Author of the "Mickey" Sound Recordings.

#### 1. The District Court's Factual Findings Were Not Clearly Erroneous.

The district court's factual findings regarding Basil's, Mathieson's and Radialchoice's actions and intent were not clearly erroneous. To the contrary, they are amply supported by the record as described above.

17

Further, Stillwater's lack of evidence to support its joint authorship claim effectively left Basil's evidence factually undisputed. Basil's testimony concerning her supervisory control, her pervasive creative input, her ubiquitous personal involvement in the "Mickey" sound recordings is undisputed by any other person who was personally involved in their creation. Stillwater's failure to introduce evidence on Mathison's intent to be a joint author, or to dispute Basil's testimony that she did *not* intend to be a joint author, supports the district court's ruling. Further, Lait's testimony that he thought there was no such thing as joint authorship at the time affirmatively shows he did not intend Radialchoice to be a joint author. Further, Radialchoice's recording agreements affirmatively show no "joint authorship" intent because they contemplate Radialchoice's sole ownership of the entire copyright by assignment from Basil, while its own 1982 copyright registrations identify only Basil as the person whose work its predecessor claimed to own as "employer for hire."

The trial court's findings on those issues are not only not "clearly erroneous," it would have been clear error for the trial court to have found otherwise.

### 2. The District Court's Rulings on Mixed Questions of Law and Fact Were Not Clearly Erroneous.

The district court's application of this Court's "joint authorship" legal principles to the complex set of 40-year-old facts it had to find to determine joint

18

authorship also was not clearly erroneous. This Court requires objective

manifestations of shared intent, independently copyrightable contributions to a

work, and findings on why a work public has public appeal to evaluate a joint

authorship claim, as described in more detail *infra*. *Aalmuhammed v. Lee*, 202 F.

3d 1227, 1232-35 (9th Cir. 2000). Determining whether Mathieson and Basil were

joint authors of the "Mickey" sound recordings under those standards required the

district court to "to marshal and weigh evidence, make credibility judgments, and

otherwise address 'multifarious, fleeting, special, narrow facts" to evaluate those

criteria, and its efforts should be "subject only to review for clear error" in such

circumstances as described above. *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset

Management*, supra, 138 S. Ct. at 967, 969.

The district court's determinations that Mathieson and Basil were not joint

authors under these standards were not clearly erroneous and support affirmance of

the district court's judgment for several reasons.

First, Stillwater's evidentiary failure to prove shared intent alone is fatal to

Stillwater's "joint authorship" claim under this Court's standards. *Aalmuhammed

v. Lee*, supra, 202 F.3d. 1232-35, for example, held that even though the plaintiff

asserting joint authorship of the *Malcom X* motion picture contributed

copyrightable elements to it, he was not a joint author because the evidence

showed Spike Lee and Warner Bros. did not *intend* him to be one. *Almuhammed*

19

cited with approval *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998), which held that a dramaturg's contribution of copyrightable elements to a play did not make him a joint author because the playwright never *intended* the dramaturg to be a joint author, or the play to be a joint work.

Similarly, here the undisputed evidence is that Basil did not intend to be a joint author. Basil specifically testified that she supervised, artistically controlled, and, in the language of *Aalmuhhamed*, 1202 F. 3d at 1233, "master minded" the "Mickey" sound recordings as described above. (1-ER-122, 129,134, 137, 141, 148, 154, 155, and 17.) Her "intent" testimony was affirmatively supported by the relevant recording agreements, which contain no "joint authorship" provisions but instead assign sole copyright ownership of Basil's work to Radialchoice, and by Radialchoice's own copyright registrations, which claim sole ownership due solely to the efforts of Basil.[4] Meanwhile, Lait admitted Radialchoice removed a provision that would have given it artistic control over the sound recordings from the recording agreements, and he never factually disputed Basil's intent. (2-E - 103-104.) Neither Mathieson, nor the other producer Veitch, nor the session

---

[4] Stillwater's attempt to misrepresent Basil's intent testimony as "subjective" (AOB 10) is both inaccurate and ironic. Basil's "intent" testimony is supported by her undisputed testimony concerning her extensive supervision and control over the recording sessions, the terms of the recording agreements and copyright registrations described above, and the lack of any controverting intent testimony by Mathieson.

musicians whose performances are recorded in the "Mickey" sound recordings testified on intent (or anything else). It was not clear error for the district court to determine that she was not a joint author of the "Mickey" sound recordings with Mathieson or Radialchoice based on this evidence.

Second, the district court's conclusion that Stillwater did not meet its burden of proving that Mathieson made independently copyrightable contributions to, let alone superintend, "the "Mickey" sound recordings, is also not clear error. (1-ER-17-18.) There was no direct evidence of what producer Mathieson contributed to the "Mickey" sound recordings, except for Basil's testimony that he helped her mix them under her supervision. Mathieson did not testify on the subject, and Lait only testified that Mathieson performed "the duties of a record producer." (2-ER-108.) Basil testified that she both personally mixed and supervised the recording and mixing of the sound recordings, and that producers Mathieson and Veitch simply observed others recording the musicians' performances. (2-ER-122, 148.) The district court's determination that this factor was "neutral" based on what it called Lait's "generic" testimony was not clear error in these circumstances.

Third, the district court's application of the "audience appeal" joint authorship factor was not clearly erroneous. See *Richlin v. Metro-Goldwyn-Mayer Pictures*, Inc., 531 F. 3d 962, 968 (9th Cir. 2008); *Aalmuhammed,* supra, 202 F.3d

21

at 1234. The district court found that Stillwater's own evidence showed that audience appeal "was predicated more on Basil's performance than it was on Mathieson's production." (1 ER 19.) Lait arguably admitted that Basil was primarily responsible of the "audience appeal" of "Mickey" when he laid the blame on Basil, not Mathieson, for Basil's unsuccessful second album. (ER 90.) Neither Lait nor Mathieson testified to the "audience appeal" of whatever unidentified contributions Mathieson may have made to the "Mickey" sound recordings. Lait's admissions, the agreements and registrations, and Basil's factually undisputed testimony about the pervasiveness of her contributions to the recordings "suggests, just as common sense would confirm, that the relative success of the *Word of Mouth* album…could be, and was in fact, 'appraised' based on how well Basil performed, not on Mathieson's mixing of the master tapes." (1-ER-19.)

### 3. The District Court's Legal Conclusions Are Correct.

The district court's legal conclusions regarding joint authorship are also correct if considered *de novo,* because the district court correctly articulated and applied this Court's "joint authorship" legal standards, for several reasons.

First, Radialchoice and Mathieson could never be joint authors of the "Mickey" sound recordings with Basil under Ninth Circuit law because, as described above, Basil never *intended* them to be joint authors with her, objective

evidence supports her intent, and no objective evidence disputes it. Lack of shared intent is fatal to Stillwater's joint authorship claim as described above. *Aalmuhammed v. Lee*, 202 F.3d. at 1234 (9th Cir. 2000) ("a person claiming to be an author of a joint work must prove that both parties intended each other to be joint authors."); *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998) (same).

Second, the district court's joint authorship determination is correct even if Mathieson made a legitimate creative contribution to the "Mickey" sound recordings under the law of this Circuit. This Court has made clear that contributing independently copyrightable elements to a work intended to be a "unitary whole" is not enough to show the "shared intent" needed to establish joint authorship. *Aalmuhammed*, for example, held it was "undisputed that the [*Malcolm X*] movie was intended by everyone involved...to be a unitary whole," but ruled that did not answer the "different" question of whether everyone involved "intended each other to be joint authors." 202 F.3d at 1231-32, 1234. Even though the *Aalmuhammed* court acknowledged that the plaintiff authored "expression for purposes of determining whether it is independently copyrightable[,]" it affirmed summary judgment that he did not become an "author of [a] joint work" with Warner Bros.' employee for hire Spike Lee because neither Spike Lee nor Warner Bros. intended him to be one as described above. *Id.* at 1232.

23

Similarly, *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc*., 531 F. 3d 962, 968-69 (9th Cir. 2008), affirmed a district court's summary judgment that a co-author of a story treatment was not a co-author of the resulting motion picture even though he made independently copyrightable contributions to it, because his written assignment of rights to the studio evidenced that he did not intend to be a joint author with the assignee, while "no language in the Assignment indicates any intent…to coauthor the Motion Picture." *Id*. at 969.[5]

Other courts in this Circuit also have recognized that lack of mutual intent to be joint authors alone is fatal to a joint authorship claim. See, e.g. *Reinsdorf v. Sketchers*, 922 F.Supp.2d 866, 874-75 (C.D. Cal. 2013) (denying summary judgment for plaintiff on joint authorship claim even though "the control and audience appeal factors suggest plural authorship," because plaintiff did not establish that that the parties intended to be joint authors even though they intended their separate contributions to be merged into a single work: "While intent to

---

[5] *Richlin* supports affirmance of the district court's judgment for two additional reasons. First, the recording agreements here, as in *Richlin*, assigned copyright in the "Mickey" sound recordings to Radialchoice, evidence the *Richlin* court found sufficient to disprove intent to be a joint author. 531 F. 3d at 967-68

Second, *Richlin* affirmed summary judgment that plaintiff was not a joint author even though the third "audience appeal" factor raised an issue of fact, because "the two primary *Aalmuhammed* factors weigh most heavily in favor of Appellees[.]" Id. at 970.

merge separate contributions is a necessary element of a joint work, it is not equivalent to an intent to be joint authors.")

Third, the district court's ruling on the lack of evidence of any "independently copyrightable contribution" by Stillwater and Mathieson was also legally correct. Radialchoice's paying for recording sessions, exercising its contractual right to approve others' recording efforts, and distributing the sound recordings to the public after they were completed are not independently copyrightable contributions to the "Mickey" sound recordings as a matter of law, because they are not "works of authorship." 17 U.S.C. §102(a). Any alleged direction or ideas by Lait could not have amounted to copyrightable contribution because they were not "fixed" in a "tangible medium of expression." *Id.* "To be an author, one must supply more than mere direction or ideas." *S.O.S. Inc. v. Payday Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). An author "does not obtain an interest in the work" when it does not reduce "those ideas to an expression[.]" *Ashton-Tate Corp. v. Ross*, 728 F. Supp. 597,601, aff'd, 916 F.2d 516 (9th Cir. 1990). See also, *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 62-63 (D.D.C. 1999), cited with approval by Stillwater at AOB 30, 31 (setting up and paying for a sound recording does not make one a joint author).

Fourth, the "audience appeal" evidence supported the district court's determination that this factor weighed in Basil's favor as described above. Further,

25

in contrast to the joint intent element, this factor alone is not dispositive under the law of this Circuit. Summary judgment of no joint authorship can be granted even when there were issues of fact on this factor, because evidence on the other "intent" and "copyrightable contribution" factors can conclusively determine no joint authorship. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc*., 531 F. 3d 962, 970 (9th Cir. 2008).[6]

**B.**    **Stillwater's Argument that Mathieson's Status as a Producer Created a Presumption of Joint Authorship Lacks Merit as a Matter of Law.**

Lacking evidence of joint authorship, Stillwater argued below, and argues again on appeal, that because of the "traditional relationship" between producers and artists, what amounts to a presumption that producers are joint authors can make up for its lack of evidence on the issue and require reversal of the district court's factual findings and judgment. (AOB 25-32.) That argument lacks merit for several reasons.[7]

---

[6] Stillwater's argument that the district court's "no joint authorship determination" should be reversed because Basil produced no evidence on the "audience appeal" issue (AOB 16-17, 32) lacks merit because (i) Stillwater's own evidence showed that audience appeal was attributable to Basil, (ii) Under *Richlin*, this factor is not dispositive as described above, and (iii) Stillwater, as the plaintiff below, had the burden of proof.

[7] In addition to lacking legal merit, Stillwater's "presumption" argument would never grant them 50% of the "Mickey" sound recordings, because the same "presumption" would apply to the other producer Taylor Veitch and allocate to Veitch the same interest it would to Mathieson. This error is relatively

First, this Court has rejected the sort of rigid formula for which Stillwater effectively advocates to determine joint authorship.  When, as here, no contract evidences the parties' intent to be joint authors, "the [joint work] inquiry must of necessity focus on the facts," and that inquiry "cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much." *Aalmuhammed,* 202 F.3d at 1235.

The legal "tradition" or presumption Stillwater proposes is exactly the sort of the "rigid formula" the *Aalmuhammed* court rejected.  Applying it would result in a categorical "joint authorship" determination whenever someone is named a producer on a sound recording with musical artists, regardless of the facts.  As another district court stated in rejecting such an argument, "Defendants have not shown that every 'creative contributor' to a music video is, as a matter of law, presumptively a 'joint author' of the video absent a work for hire agreement…Recourse to a 'presumption' of joint authorship would prematurely short circuit the analysis the Ninth Circuit has mandated for the determination of whether a creative contributor is a joint author." *Creative Dream Prods., LLC v. Houston*, 2015 WL 12731915, at *5 (C.D. Cal. April 2, 2015).[8]

---

unimportant, because neither Mathieson nor Veitch qualify as joint authors for the reasons stated herein.

[8] Stillwater's attempt to distinguish *Creative Dream Productions* on the ground the "formula" proposed there was based on copyrightable contribution rather than producer status (AOB 10) is unpersuasive. The principle is the same in both

27

Second, the authorities Stillwater cites do not support the proposition it advances. None of them purport to establish a presumption that producers are joint authors simply because they have that title. Instead, they all simply acknowledge, properly, that due to their position, producers "may" contribute enough authorship to a produced sound recordings to qualify as protectable expression. Thus, H. R. Rep. No. 94-1476 at 56, cited by Stillwater at AOB 14, 19 and 29, merely states that "[t]he copyrightable elements in the sound recording will usually, *though not always*, involve 'authorship' both on the part of the performers and…record producers." Similarly, 1 *Nimmer on Copyright* § 2.20[A][3] (2001)[9], cited at AOB 19, 26, merely states that copyright in a sound recording "will be *either* exclusively in the performing artist, or…a joint ownership between the record producer and the performing artists." The Compendium of U.S. Copyright Office Practices §803.3 (3d Ed. 2014), cited at AOB 19 and 27, merely states that "[b]oth the performer and the producer of a sound recording of a musical performance…*may* contribute copyrightable authorship to the sound recording." (Emphasis added to all of the above quotations.) As the district court correctly noted below, these statements are

---

*Creative Dream Productions* and below: a party cannot "short circuit" the factual inquiry this Circuit requires to prove joint authorship with a presumption to avoid the obligation to produce evidence.

[9] Nimmer also advocates for an extremely broad definition of "joint authorship" that would recognize it whenever more than a *de minimis* contribution is made by a joint author, a proposition this Court has rejected as discussed above. *Id*.

all "descriptive assumption[s] of what may be true for cases in the mean, not a legal presumption for all cases." (1-ER-18,19.) Stated another way, the fact that a producer *may* have contributed protectable expression does not mean that he or she actually did to a specific sound recording; that will turn on the facts. And, none of those secondary authorities says anything about the "shared intent" this Court requires to establish joint authorship. Thus, even if they all unequivocally said a producer was "presumed" to create protectable expression simply because she or he was a producer, which they don't, none are sufficient to support a presumption of joint authorship.[10]

The various cases Stillwater cites also do not support Stillwater's presumption of joint authorship argument. For example, *Childress v. Taylor*, 945

---

[10] Further, given Appellant's heavy reliance on these equivocal secondary authorities, it should be noted that other secondary authorities unequivocally support the district court's reasoning and decision below. For example, a law review comment that discusses whether recording artist Taylor Swift or her record label Big Machine own the sound recordings of Swift's music concludes that "an artist and her label are generally not joint authors" because of the efforts of the label's record producer, analyzing the same factors as the district court below. See Delilah R. Cassidy, "You Belong with Me: Retaining Authorship and Ownership of Sound Recordings," 53 *Arizona State Law Journal* 333, 359-60 (Spring 2021), viewable at https://arizonastatelawjournal.org/wp-content/uploads/2021/05/06-Cassidy.pdf.

Even more directly, a leading copyright treatise Stillwater cites at AOB 11 discusses with approval and quotes at length from the district court's decision below, then praises its joint authorship analysis as "a refreshing, common sense look at how things work in the real world." *2 Patry on Copyright* §5:83 (Thomson Reuters, Rel. 28, 9/29/2021.)

F.2d 500, 507 (2d Cir. 1991), cited at AOB 11, 14, 24, 28 and 29, rejected a joint authorship claim precisely because, *inter alia,* there was no mutual intent to be joint authors, and thereby further supports the district court's decision here. Stillwater's brief quotation from *Childress* about "less exacting consideration [of intent] in the context of ...collaboration... between the creators of words and music of the song" (AOB 25), is an irrelevant distraction, since this case is about the "Mickey" sound recordings, not the "Mickey" music composition, and what constitutes "tradition" in music compositions between a songwriter and lyricist says nothing about a "tradition" in sound recordings between an experienced performer (Basil) and inexperienced producer (Mathieson). Nevertheless, to the extent considered inconsistent with *Aalmuhhamed*, *Childress* is not the law of this circuit.

*ABS Entm't v. CBS Corp.*, 908 F. 3d 405, 423 (9th Cir. 2018), cited at AOB 20 and 28, ruled that digital remastering of pre-1972 sound recordings did not make them copyrightable derivative works as a matter of law, and it had nothing to do with joint authorship. The quoted portion of the *ABS* decision merely recognized that the original contributions of a producer or recording engineer to the analog tapes might qualify as authorship in appropriate circumstances, a proposition recognized by the district court and Basil.

*Morrill v. the Smashing Pumpkins*, 157 F. Supp. 1120, 1124 (C.D. Cal. 2001), cited at AOB 15. 20, 26 and 32, is a district court decision that, consistent with *Aalmuhammed,* found joint authorship based on undisputed evidence that each putative author made independently copyrightable contributions to the music and significant evidence that both intended to create a joint work. The *Morrill* court therefore relied on precisely the type of evidence Stillwater did not produce below. *Morrill's* citation to the *Nimmer* reference quoted above is unimportant because that reference acknowledges that a performer could be the sole copyright owned a sound recording as quoted above, and as the district court correctly ruled here.

*Systems XIX, Inc. v. Parker,* 30 F. Supp. 2d 1225, 1228-29 (N.D. Cal. 1998), cited at AOB 20, 29 and 30, evaluated joint authorship before this Court issued its guidance in *Aalmuhammed*. *Systems XIX* did not purport to establish a "presumption" of producer joint authorship; to the contrary, it denied summary judgment on the copyright ownership claim before it because there were disputed issues of fact on mutual intent and other issues. Its holding is of limited utility since the district court below decided joint authorship following a bench trial in which it weighed evidence, but *System XIX* is consistent with the district court in deciding joint authorship based on the evidence rather than a legal presumption.

31

Nevertheless, to the extent it is viewed as inconsistent with *Aalmuhammed,* it is no longer good law.

Similarly, *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57, 62-63 (D.D.C. 1999), cited at AOB 30 and 31, is another pre-*Aalmuhammed* district court decision*,* this time from outside this Circuit, which held that fact questions on whether a producer was an author of a sound recording precluded summary judgment. After ruling that the producer's setting up and paying for the recording session was insufficient to show a contribution of original expression to it, it ruled that it had "insufficient information" to grant summary judgment on the joint authorship issue. *Id.* This decision also is of limited utility since the district court here made factual findings following a bench trial rather than ruled on summary judgment, but *Staggers'* ruling that setting up and paying for a recording session did not prove shared authorship or intent favors Basil, as does *Staggers'* reliance on evidence rather than a "presumption" to show joint authorship. Nevertheless, to the extent it is viewed as inconsistent with *Aalmuhammed,* it is no longer good law.

Finally, *Mapp v. UMG Recordings, Inc*., 208 F. Supp. 3d 776 (M.D. La. 2018), cited at AOB 31, is another out-of-circuit lower court decision that involved a copyright infringement claim by a plaintiff who was both the songwriter of the recorded musical composition and the producer of the sound recording at issue, against a record label defendant. The record label moved for judgment on the

pleadings on the grounds that, *inter alia*, it had entered into a license agreement with a co-owner of the song, and thus its distribution of the song could not be infringing. Acknowledging that joint authorship requires a "fact-specific inquiry," 208 F. Supp 3d at 787, the *Mapp* court ruled that "the only indication of intent…is the Producer Agreement[,]" and found it supported a joint authorship determination because it referred to the label's licensor as owning intellectual property in the sound recording. Id. at 287-88. The *Mapp* decision cites *Morrill* and the *Nimmer* reference discussed above, but not for the proposition Stillwater advances. As neither supports the presumption Stillwater seeks, and as *Mapp* decided joint authorship on the facts before it rather than a legal presumption, it also does not support Stillwater's position. Nevertheless, to the extent it is somehow viewed as inconsistent with *Aalmuhammed,* it is not good law in this Circuit.

In sum, no cited authority supports Stillwater's argument that Mathieson's status as a producer, together with alleged but unspecified "more than *de minimis*" contributions, establishes a presumption of joint authorship that overcomes the facts the trial court found establish Basil's sole authorship and ownership of the "Mickey" sound recordings. The secondary authorities Stillwater cites all recognize the factual possibility that a performer may be the sole author of a sound recording in which a producer participated. The case law Stillwater cites

33

affirmatively favors Basil, with many of the cited decisions denying summary judgment precisely because evidentiary disputes Stillwater argues should be irrelevant precluded such a ruling.  They all acknowledge the need for evidence, rather than "tradition" or "presumption," to establish joint authorship.  To the extent thought inconsistent with *Aalmuhammed*, they are not good law because they either predate *Aalmuhammed* or are from lower, out-of-circuit courts.  Finally, newer secondary authorities approve of the district court's decision.  The facts found by the trial court, the legal principles this Court articulated in *Aalmuhammed* and its progeny, the authorities Stillwater cites and all other extant authorities support affirmance of the district court's judgment here.

## C.    The Statute of Limitations Bars Stillwater's Joint Authorship Claim.

This Court can affirm a judgment on any ground supported by the record. *Atel Fin. Corp. v. Quaker Coal Co.,* 321 F. 3d 924, 926 (9th Cir. 2003.)  Here, the record establishes that Stillwater's joint authorship claim is barred by the Copyright Act's three-year statute of limitations.  Although the district court did not enter judgment for Basil on that basis, this Court should affirm the district court's judgment for Basil on this additional ground.

Copyright ownership claims accrue when co-ownership is expressly repudiated, and they are barred three years after that express repudiation.  *Seven Arts Filmed Entertainment Limited v. Content Media Corp. PLC*, 733 F.3d 1251,

34

1254 (9th Cir. 2013) (plaintiff's delay of more than three years barred copyright ownership claims); *Zuill v. Shanahan*, 80 F.3d 1366, 1369-71(9th Cir. 1996) (copyright ownership claim barred by statute of limitations because plaintiff waited more than three years after defendant repudiated Plaintiff's ownership to file suit); see also, *Consumer Health Information Corp. v. Amylin Pharmaceuticals, Inc.*, 819 F. 3d 992, 996 (7th Cir. 2016) (suit to recover copyright barred because plaintiff waited seven years after agreeing it was not an owner to file suit claiming that it was).

Express repudiation commonly occurs when a competing copyright claimant/defendant rejects a plaintiff's copyright ownership or co-ownership claim. However, a plaintiff's own previous admissions in a contract or instrument can also repudiate its subsequent ownership claim. See, e.g., *Consumer Health Information Corp. v. Amylin Pharmaceuticals, Inc*., supra, 819 F. 3d at 997 (plaintiff expressly repudiated its copyright ownership claim when it signed an agreement acknowledging that defendant owned the copyright seven years before filing suit.)

Here, Stillwater's predecessor Radialchoice expressly repudiated Stillwater's present joint ownership claim in 1982, when it filed copyright registrations that claimed sole ownership because Toni Basil alone created the "Mickey" sound recordings, with Radialchoice only owning them as "[e]mployer for hire" of Basil.

35

Radialchoice's registrations, conspicuously, did *not* claim that it was "employer for hire" of Mathieson, or "employer for hire" of Basil and Mathieson together, or "employer for hire" of Basil and any of the other studio personnel and musicians who participated in the "Mickey" sound recordings. Stillwater did not claim joint authorship of the "Mickey" sound recordings on any basis until it abandoned its "work made for hire" claims after it filed suit below in 2016, more than 34 years after its predecessor filed the 1982 copyright registrations plainly denying joint authorship and attributing creation of the "Mickey" sound recordings solely to Basil. Stillwater's and its predecessor's failure to dispute Basil's sole creation of the "Mickey" sound recordings within three years of the 1982 copyright registrations bars it from claiming joint ownership in this appeal under the authorities cited above. Thus, Stillwater is not and never can be a joint author of the "Mickey" sound recordings. This Court should affirm the district court's judgment on this basis.

## CONCLUSION

This Court should affirm the district court's judgment for all the reasons described above.

January 18, 2022              RIMON, P.C.

                              s/ Mark S. Lee
                              _____
                              *Attorneys for Defendant-Counterclaimant-*
                              *Appellee* Antonia Basilotta

36

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32 of the Federal Rules of Appellate Procedure, and Circuit Rule 32-1, I certify that this Brief is proportionately spaced, has a typeface of Century Schoolbook, 14 point, and contains 8691 words, including footnotes, but excluding this Certificate of Compliance, the Table of Citations, the Table of Contents, Table of Authorities, the Corporate Disclosure Statement, Addendum, and the Certificate of Service. This brief was created in Microsoft Word, and I have relied on that software's word-count feature to calculate the word count.

January 18, 2022                    RIMON, P.C.

*s/Mark S. Lee*
*Attorneys for Defendant-Counterclaimant-Appellee* Antonia Basilotta

**CERTIFICATE OF SERVICE**

I certify that on January 18, 2022, this Responsive Brief of Defendant-Counterclaimant-Appelle Antonia Basilotta was electronically filed using the CM/ECF system. All parties' counsel are registered CM/ECF users and will be served by the CM/ECF system.

January 18, 2022                    RIMON, P.C.

*s/Mark S. Lee*
*Attorneys for Defendant-Counterclaimant-Appellee* Antonia Basilotta