# 21-55241

## In the
## United States Court of Appeals
## For the Ninth Circuit



STILLWATER LTD, a United Kingdom Company,

*Plaintiff-Counter-Claim-Defendant-Appellant,*

v.

ANTONIA BASILOTTA,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES
CASE NO. 2:16-cv-01895-SK
HONORABLE STEVE KIM

## REPLY BRIEF FOR PLAINTIFF-COUNTER-CLAIM-DEFENDANT-APPELLANT

ANTHONY MOTTA
*Attorney for Plaintiff-Counter-Claim-Defendant-Appellant*
64 Fulton Street, Suite 305
New York, New York 10038
Telephone: (914) 589-5356
Facsimile: (332) 777-1875
amotta@anthonymotta.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

    I.    BASIL IGNORES THE FACTUAL FINDINGS OF THE
LOWER COURT TO ARGUE SHE "MASTERMINDED"
THE DSR'S AND MATHIESON MADE NO
INDEPENDENTLY COPYRIGHTABLE CONTRIBUTIONS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-

        A.    The Lower Court Did Not Find that Basil Superintended
the Activities of Mathieson or the Other Individuals in
the Creation of the DSR's . . . . . . . . . . . . . . . . . . . . . . -4-

        B.    The Lower Court Specifically Found Mathieson Made
Independently Copyrightable Contributions . . . . . . . . -9-

        C.    The Copyright Registrations Do Not Establish Basil was
the Sole Author of the DSR's . . . . . . . . . . . . . . . . . . -10-

    II.    THE PRODUCER AND PERFORMER OF A SOUND
RECORDING HAVE TRADITIONALLY BEEN FOUND TO
BE JOINT AUTHORS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

        A.    Basil Has Failed to Show the Authority Cited by
Stillwater as to the Acknowledged Joint Authorship
Status of the Producer-Performer of a Sound Recording
to Be Incorrect or Inapplicable . . . . . . . . . . . . . . . . . -12-

        B.    The Lower Court Specifically Found Mathieson Engaged
in Activities as Producer Which Show Him to be a Joint
Author . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

    III.    STILLWATER'S CLAIM IS NOT BARRED BY THE
STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . -18-

A.      Basil Has Waived the Affirmative Defense of Statute of
        Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

B.      The Copyright Registrations Are Not an Express
        Repudiation Required to Start the Running of the Statute
        of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

# TABLE OF AUTHORITIES

## Cases

*389 Orange Street Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000)  . . . . . . -2-, -12-, -13-, -16-, -17-

*Consumer Health Info. Corp. v. Amylin Pharms., Inc.,* 819 F.3d 992 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-, -22-

*Creative Dream Productions, LLC  v.  Houston*. 2015 WL 12731915 (C.D. Cal. April 2, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

*Dawe v. Corrections USA*, 506 F. App'x 657 (9th Cir. 2013) . . . . . . . . . -16-, -17-

*Mapp v. UMG Recordings, Inc.*, 208 F. Supp. 3d 776 (M.D. La. 2016)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-, -18-

*Morrill v. the Smashing Pumpkins*, 157 F. Supp. 2d 1120 (C.D. Cal. 2001)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-, -16-

*Morrison v. Mahoney*, 399 F.3d 1042 (9th Cir. 2005)  . . . . . . . . . . . . . . -19-

*Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-, -21-

*Sram Corp. v. Shimano, Inc.*, 25 F. App'x 626 (9th Cir. 2002) . . . . . . . . -16-, -17-

*Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57 (D.D.C. 1999)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Systems XIX, Inc. v. Parker*, 30 F. Supp. 2d 1225 (N.D. Cal. 1998)  -15-,-16-, -17-

*Thomson v. Larson,* 147 F.3d 195 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . -13-

*U.S. Bank v. Vill. at Lakeridge, LLC.*, 138 S. Ct. 960 (2018) . . . . . . . . . . -3-

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996) . . . . . . . . . . . . . . . -21-, -22-

## **Other Authorities**

Compendium of U.S. Copyright Office Practices §803.3 (3rd Ed. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-, -17-

H.R. Rep. No. 94-1476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

1 *Nimmer on Copyright* § 2.10 [A][3] (2001) . . . . . . . . . . . . -16-, -17-, -18-

## PRELIMINARY STATEMENT

The Responsive Brief ("RB") of the Appellee, Antonia Basilotta ("Basil"), ignores and misstates the factual findings of the Lower Court in an attempt to support her argument that she is the sole author of the DSR's, and that the judgment of the Lower Court should be affirmed.[1]

Relying solely on her direct testimony, and ignoring the Exhibits admitted at trial and concessions made on cross-examination, Basil spins a yarn that as a novice and untested recording artist she was entrusted to be the mastermind of the DSR's with absolute control over the selection of the musical compositions, selection of the musicians and their performance, the activities of the producer, Mathieson, and the final mix of the master tapes.

While the Lower Court did find Basil to be "marginally more credible" (ER 5) it by no means accepted her testimony lock, stock and barrel. It found her testimony that she was the "mastermind" of the DSR's to be self-serving. (ER 18, ¶ 18). It found that the selection of musical compositions to be recorded, the selection of musicians, the selection of

---

[1]"DSR's" was used by the Lower Court and in Appellant's Opening Brief ("AOB") as an abbreviation for "Disputed Sound Recordings", the recordings at issue. (ER 3, AOB 2). Appellee uses the "'Mickey' Sound Recordings" to identify the DSR's. Use of the term is misleading as there are ten sound recordings in dispute and not just "Mickey". (Id) . Other terms defined in the AOB will be used herein.

Mathieson as producer was jointly decided by Basil and the record label and Stillwater's predecessor, Radialchoice Ltd. It found that Mathieson provided direction to musicians, oversaw the recordings to obtain the best possible performances, and mixed the master tapes with Basil's assistance. (ER 9, ¶ 4). The RB states the Lower Court did not find that Mathieson made independently copyrightable contributions to the DSR's (RB 21), but it did make a specific finding that he made such contributions. (ER 16, ¶ 8).

The RB cites to *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) for the proposition that its three-part test to determine joint authorship, intent, independent copyrightable contribution, and audience appeal, is required to be used in every instance. (RB 27). *Aalmuhammed* made clear that this is not the case. It held the factors it set forth "cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much." *Id* at 1235. Traditional artistic relationships such as lyricist/composer require less exacting consideration.

The authority cited by Stillwater in the AOB (pp. 25–32) shows the relationship of producer/performer of a sound recording to merit such less exacting consideration. Where as here, the producer arranged recording sessions, provided direction to musicians, oversaw the recordings to obtain

the best possible performance, and mixed the master tapes, he is considered a joint author. (ER 9, ¶ 14).

Perhaps realizing the futility of its arguments Basil takes a stab at obtaining an affirmation by raising for the first time on appeal that the statute of limitations bars Stillwater's claim. The defense has been waived as it was not asserted in either Basil's Answer or the Pretrial Conference Order.

The issue before the Court is whether the Lower Court applied the correct legal standard in making its determination. As the resolution entails primarily legal work the standard of review is *de novo*. *U.S. Bank v. Vill. at Lakeridge, LLC.*, 138 S. Ct. 960, 967 (2018).

The Lower Court failed to recognize that the relationship of a sound recording producer/performer is a traditional artistic relationship in which requisite joint author intent can be determined by the very nature of the relationship. It improperly found Mathieson was not a joint author.

# ARGUMENT

## I. BASIL IGNORES THE FACTUAL FINDINGS OF THE LOWER COURT TO ARGUE SHE "MASTERMINDED" THE DSR'S AND MATHIESON MADE NO INDEPENDENTLY COPYRIGHTABLE CONTRIBUTIONS

### A. The Lower Court Did Not Find that Basil Superintended the Activities of Mathieson or the Other Individuals in the Creation of the DSR's

Under the guise of providing support for the factual determinations of the Lower Court Basil cites and refers in her RB to her direct testimony that she "masterminded" the creation of the DSR's. (RB 8–10, 16, 18, 20 and 22).

As a premise to her statements Basil extols her background as a "singer, dancer and choreographer". (RB 3). While Basil does have an impressive background as a choreographer and dancer she was not in 1979 a known recording artist with a track record of success.[2]

The Lower Court found Appellant's predecessor, Radialchoice, was formed "to develop and embark on a new musical concept – albums

---

[2]Basil never reached star status as a recording artist. Lait testified at trial that the album, "Word of Mouth", embodying the DSR's was "reasonably" successful. (ER 76:11 – 12). The follow-up album "Toni Basil" was a "complete disaster". (ER 91:8–9). No further albums of Basil sound recordings were ever released thereafter.

containing music videos instead of just sound recordings." (ER 6, ¶ 4). It sought "visually literate artists to create not only sound recordings but also accompanying music videos." (Id). It selected Basil not because of her success as a recording artist, she had none, but because she "was the type of visually literate artist" they were looking for. (Id). The Lower Court noted a separate music video album, "conceived choreographed, directed, and edited" by Basil was not at issue in the litigation, only the DSR's.

Notwithstanding her dearth of experience and success as a recording artist, Basil argues that she had full artistic control "with final say over the sound recordings". (RB 8). She states she told her "vision" of the sound recordings to Mathieson and the musicians, and that Mathieson "simply observed others recording the musicians' performances" (RB 8–9, 22). She testified that her interaction with Mathieson wasn't a "give-and-take". (RB 9). Basil states "she supervised, masterminded, and approved all of the recording mixes, even going further to state "she both personally mixed the recorded tapes and approved others' work on the mixes of the sound recordings." (RB 8).

The RB states Basil "auditioned, selected and had the right to hire and fire instrumental musicians." (RB 9). She states she "decided upon" the

musical compositions. (Id).

The RB states "no one disputed Basil's testimony concerning her artistic control and supervision of the recording sessions." (RB 9). This is untrue as Basil's cross-examination, the testimony of Stillwater's witness, Simon Lait, and documents entered into evidence all contradict her claim that she created the DSR's as a figurative "one-man band".

On cross-examination Basil admitted that Radialchoice was empowered to reject the DSR's if they were not commercially viable. ER 160:2–161:3. When confronted by her deposition testimony Basil testified that sound recordings were a collaborative effort. ER 151:5–152:12. She testified on cross-examination that she provided input as to the mixing of the master tapes, not that she personally mixed them herself with the assistance of Mathieson. ER 162:1 – 164:11.

Lait testified that Radialchoice initially selected the songs and that the ultimate selection was mutually agreed. ER 73:15–74:7. He testified that the recording of the DSR's was a collaborative process. ER 79:3 – 18.

As set forth in the AOB Radialchoice caused the DSR's to come into being. (AOB 22). It contracted with Mathieson to superintend and oversee the recording of the DSR's. (Id). The 1980 Supplemental Producer

Agreement, (Trial Exhibit 6, ER 285-287), which dealt with the recording of the DSR's required Mathieson to devise a recording budget. (Id at ER 286, ¶ 3). In the event Mathieson exceeded the budget the excess could be used to offset advances payable to him. (Id). On Redirect Basil admitted she had not seen the budget at the time the DSR's were created. (ER-175:18-22). The power of the purse is the power to control and that power was vested in Mathieson, not Basil. Certainly Mathieson would not have agreed that Basil have complete control if he was to be responsible for excess costs.

As set forth in the AOB, the 1979 Agreement, as amended by the 1980 Agreement, required Basil only to provide services as a vocalist. (AOB 23). It did not authorize or require her to superintend and control the creation of the DSR's. (AOB 23–24).

More importantly, the Findings of Fact of the Lower Court did not accept Basil's claim she was the "mastermind" and superintended all aspects of the recording of the DSR's, and that she "personally created and supervised others' contributions to the DSR's" (RB 16). It found only that she made the self-serving claim of being the "mastermind". (ER 18). As set forth in the AOB, while the Lower Court found the statement to be corroborated by the removal of language in the 1979 Agreement that the first

three recordings meet a satisfactory "artistic standard" the subsequent 1980 Amendment required that the DSR's, including "Mickey", be "commercially suitable". (AOB 6, 12–14).

The Lower Court specifically found the musical compositions embodied in the DSR's were selected and jointly approved by Radialchoice and Basil. (ER 9, ¶ 12). It did not find they were selected solely by Basil.

The Lower Court found that Basil helped Mathieson mix the master tapes. (ER 9, ¶ 15). It did not find that Basil "supervised, masterminded and approved all of the recording mixes" as she claims. (ER 8).

The Lower Court did not find that Mathieson simply observed others recording the musicians' performances as claimed by Basil. It found that Mathieson's responsibilities as producer was to (1) arrange and schedule meetings and recording sessions for the recording of songs; (2) ensure that musicians and vocalists appeared as required; (3) obtain the best possible performances from the vocalists and musicians; (4) provide creative input to the recording of the three songs; (5) ensure that the sound recordings were technically satisfactory and commercially suitable. (ER 7, ¶ 9). It found that Lait or his assistant attended recording sessions and saw Mathieson providing direction to musicians, oversaw the recordings to obtain the best

possible performances, and saw Mathieson mix the master tapes. (ER 9, ¶ 14).

Simply put, the fantastical assertions made by Basil that Radialchoice caused and financed the creation of the DSR's, retained a Producer, and left the recording and mixing of the DSR's solely to an unproven recording artist were not accepted or adopted by the Lower Court.

### B. The Lower Court Specifically Found Mathieson Made Independently Copyrightable Contributions

Basil states in the RB that the Lower Court found that Mathieson did not make independently copyrightable contributions to the DSR's arguing that this requirement for joint authorship was not satisfied. (RB 21, 25). This is blatantly false. The Lower Court found specifically that Mathieson "did make a copyrightable contribution." (ER 16, ¶ 8).

In addition, the Lower Court, during closing argument on December 10, 2019, twice stated that Mathieson made independently copyrightable contributions to the DSR's. It stated:

> "I think, clearly, mixing the tape, mixing the songs is independently copyrightable. So that's, clearly, a contribution that would be independently copyrightable and that, I think, the evidence shows that Mathieson did". (ER 44: 20–23).

There was subsequently the following interchange:

"MR. MOTTA: Okay. Well, Mathieson also directed the recordings as I previously went through.

THE COURT: Directed – – okay. Yeah, so there's music direction – – so the end product of music direction – – you could copyright it then – – okay. Then there is the mixing. All right. So there's two things there. All right.  (ER 45:23-46:3).

## C.    The Copyright Registrations Do Not Establish Basil was the Sole Author of the DSR's

While the Lower Court acknowledged the copyright registrations for the DSR's (ER 22), it made no finding that they were evidentiary as to whether the DSR's were or were not joint works[3].  Basil in the RB states that the copyright registrations "claim sole ownership due solely to the efforts of Basil". (RB 21). They do not claim Radialchoice was an "employer for hire" of Mathieson. (RB 36).  Basil argues that the registrations are indicative of an intent that Basil was the sole author of the DSR's. (Id). They do no such thing.[4]

---

[3]There are two copyright registrations for the DSR's: a registration for the "Mickey Single" admitted as Trial Exhibit 8 (ER 292–294) and "Word of Mouth" admitted as Trial Exhibit 9 (ER 296–298).

[4] Basil also argues that the lack of "joint ownership" provisions in the relevant recording agreements "affirmatively" support her subjective statement at trial that she did not intend joint ownership. (RB 18, 20–21). Basil provided no authority for this assertion. She provided no testimony or other evidence at trial that recording agreements in 1979 or 1980, or even currently, customarily contain a provision stating either sole or joint ownership in sound recordings.

-10-

First, Basil provides no authority whatsoever to support her argument that a copyright registration is evidence there is no joint ownership when it does not state there are joint owners.

Second, the copyright registrations for the DSR's do not identify Mathieson as an employee for hire because he was not. Pursuant to the Producer Agreement (Trial Exhibit 5, ER 276–283), the 1980 Supplemental Producer Agreement (Trial Exhibit 6, ER 285–286), and the 1982 Supplemental Producer Agreement (Trial Exhibit 7, ER 289–290) title to Mathieson's interest in the sound recordings vested in Radialchoice. (See also ER 7, ¶ 8). Stillwater claims Mathieson's copyright interest as a result of the transfer to its predecessor. Radialchoice is the copyright claimant on both registrations to the "sound recordings/performance & artwork", in part, because of the transfer.

Third, the copyright registrations cannot be indicative of an intent on the part of either Basil or Radialchoice because neither were involved in the preparation of the applications to file or the filings themselves. As indicated by the registrations they were filed by "Chrysalis Records, Inc." (ER 293 – 294; 297 – 298). Chrysalis was Radialchoice's distributor in the United States. (ER 11, ¶ 17).

Fourth, the copyright registrations do not claim Basil "alone created the 'Mickey' sound recordings". (RB 36). The copyright registrations assert copyright ownership in Radialchoice to the "sound recording/performance & artwork." As the Lower Court found others besides Basil were involved in the creation of the DSR's, including Mathieson, and the musicians under his control and supervision, all paid by Radialchoice. (ER 9, ¶ 16; ER 20, ¶ 16).

## II. THE PRODUCER AND PERFORMER OF A SOUND RECORDING HAVE TRADITIONALLY BEEN FOUND TO BE JOINT AUTHORS

### A. Basil Has Failed to Show the Authority Cited by Stillwater as to the Acknowledged Joint Authorship Status of the Producer-Performer of a Sound Recording to Be Incorrect or Inapplicable

The RB argues that a Court can never rely upon the reality of the creative relationship between parties as an indicia of joint authorship. (RB 27). This is contrary to the this Court's holding in *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000).

*Aalmuhammed* recognized that proof of joint ownership will vary depending upon the creative relationship between the parties. *Id* at 1235.  In a traditional relationship, such as the composer and lyricist of a musical composition, it found it was easy to determine joint ownership. *Id* at 1232. The determination becomes more difficult when more individuals working

in different capacities are involved. *Id*. While the RB recognizes the Court's holding that a "rigid formula" is not used because "creative relationships" vary too much it essentially argues that the three-part test of intent, independent copyrightable contribution, and audience appeal must be applied in every case. (RB 27). This "every case" requirement is precisely the rigid formula *Aalmuhammed* rejects.

*Aalmuhammed,* with its citation to *Thomson v. Larson,* 147 F.3d 195 (2d Cir. 1998), recognized that what must be shown for joint authorship varies depending upon the relationship between the parties. As noted in the AOB, *Thomson* stated that whether individuals are joint authors "requires less exacting consideration in the context of traditional forms of collaboration". (AOB 25, citing to *Thomson supra* at 508). Recognizing the relationship of a film production company and film director the Court in *Aalmuhammed* had no difficulty determining that the director, Spike Lee, was an author of the film at issue based upon his position and the control he exercised. *Id* at 1232.

The RB provides no authority for its argument that the *Aalmuhammed* factors are to be applied in every case without regard to the relationship of the parties. It instead misstates and mischaracterizes the secondary authority

Stillwater cites. It does the same with the case law Stillwater cites but adds that the case law authority should be disregarded either because they "predate *Aalmuhammed* or are from lower, out of circuit courts." (RP 34).

Initially, the AOB does not argue there is a "presumption" that a Producer of a sound recording is a joint author with the performer.[5]  It argues, based upon the authority it cites, that proof of joint authorship intent varies depending upon the relationship of the parties and the accepted business understanding of the relationship. (AOB 25-26). The RB states that the secondary authority cited by Stillwater provides that a Producer of a sound recording "may" be considered a joint author (RP 28, 29).  The authority actually states a producer is "usually" or "generally" a joint author, and is considered a joint author depending upon what he or she does in the creation of the sound recording.

The Compendium of U.S. Copyright Office Practices §803.3 (3rd Ed. 2014) (the "Compendium") states:

> Both the performer and the producer of a sound recording of a musical performance or spoken word performance may contribute copyrightable authorship to the sound recording. Generally the

---

[5] The AOB uses the word "presumption" once, when discussing the court's holding in *Creative Dream Productions, LLC  v.  Houston*. 2015 WL 12731915 (C.D. Cal. April 2, 2015). (AOB 15). The word does not appear elsewhere in the AOB.

-14-

performance and production are considered a single integrated work. In some cases, however, the main or sole contribution may be production authorship (as in the recording of bird songs, where there is no human performance) or the main contribution may be performance authorship (as in a recorded performance where the only production involved is to push the "record" button).

This Court in *ABS Entm't, Inc. v. CBS Corp.*, 900 F.3d 1113, 1131 (9th Cir. 2018) recognized the joint authorship of a performer and producer of a sound recording relying upon the statement of Marybeth Peters, Register of Copyrights as follows:

> "The copyrightable elements in a sound recording will usually, though not always, involve 'authorship' both on the part of the performers whose performance is captured and on the part of the record producer responsible for setting up the recording session, capturing and electronically processing the sounds, and compiling and editing them to make the final sound recording."

As set forth in the AOB the Legislative History of the Copyright Act, H.R. Rep. No. 94-1476 at 56, makes clear that a Producer of a sound recording is a joint author where he "set up the recording session, captured and electronically processed the sounds, and compiled and edited them to make a final sound recording." (AOB 29).

The RB is unsuccessful in arguing the case law Stillwater cites is not applicable or should be disregarded.

The RB fails to accurately set forth the complete holding of *Morrill v.*

*the Smashing Pumpkins*, 157 F. Supp. 2d 1120 (C.D. Cal. 2001) in an attempt to support its contention that the *Aalmuhammed* factors are required to be applied in every case. (RB 31–2).

*Morrill* made clear that the factors are helpful in determining joint authorship but that *Aalmuhammed* also held the factors cannot be reduced to a rigid formula. *Morrill* at 1123. While the court did conduct an analysis of the *Aalmuhammed* factors to find joint authorship between the producer of a music video and the performer, it set forth as an additional basis for its finding the relationship between the parties. It referred to the statement in 1 *Nimmer on Copyright* § 2.10 [A][3] (2001) ("Nimmer") that where there is an original contribution by the producer of a sound recording there exists joint ownership between the producer and the performer. *Id* at 1126. It analogized that relationship to the relationship between the producer and performer in a music video stating that "it is equally clear: absent a written agreement, the copyright for the music video is a joint ownership between performing artists and the video's producer". *Id.*

*Systems XIX, Inc. v. Parker*, 30 F. Supp. 2d 1225 (N.D. Cal. 1998) found it was not necessary to discern the subjective joint authorship intent of the producer–performer of a sound recording because the relationship was in

-16-

the specific contemplation of Congress as giving rise to joint authorship. *Id* at 1228. This is in accord and consistent with the holding in *Aalmuhammed* that proof of joint authorship varies depending upon the creative relationship of the parties. The RB asks the Court to disregard the rationale and holding of *Systems XIX* because it dealt with joint authorship prior to *Aalmuhammed* and is "inconsistent" with it. (RB 29). There is no inconsistency.

The RB misstates the holding in *Staggers v. Real Authentic Sound*, 77 F. Supp. 2d 57 (D.D.C. 1999). (RB 32–33). Citing to *Systems XIX supra*, and the Compendium and Nimmer, the court found there was insufficient evidence to determine whether the producer of the sound recording at issue made sufficient creative contributions to be considered a joint author. As set forth in I, B *supra* the Lower Court found not only did Mathieson make a creative contribution, he made independently copyrightable contributions.

Although unstated in the RB's discussion of *Mapp v. UMG Recordings, Inc.*, 208 F. Supp. 3d 776 (M.D. La. 2016) the relationship involved was the performer and producer of the sound recordings at issue. The RB omits that the performer licensed the defendant record label the use of the sound recordings referring to the performer as the "co-owner" and "licensor". (RB 33). As a basis for its finding of joint ownership between the

-17-

plaintiff-producer and defendant-performer the court cited to Nimmer and its statement that where a producer made original contributions to a sound recording there was a joint ownership between the producer and the performer. *Id* at 788.

Here, premised upon the above, Mathieson was a joint author with Basil because of his independently copyrightable and creative contributions to the DSR's. As set forth in I, B *supra* Mathieson made independently copyrightable contributions to the DSR's. As set forth below his activities as producer show him to be a joint author.

> **B.**   **The Lower Court Specifically Found Mathieson Engaged in Activities as Producer Which Show Him to be a Joint Author**

The Lower Court found that Mathieson:

•   Scheduled recording session and secured the attendance of musicians;

•   Provided direction to musicians;

•   Oversaw the recordings to obtain the best possible performances; and

•   Mixed the master tapes. (ER 9, ¶ 14).

## III.   STILLWATER'S CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

The RB argues the statute of limitations bars Stillwater's claim that Mathieson is a joint author of the DSR's.  (RB 35-37). The affirmative

defense has been waived. Even if not waived the copyright registrations are not a repudiation that Mathieson is a joint author.

## A. Basil Has Waived the Affirmative Defense of Statute of Limitations

Basil failed to assert the statute of limitations as an affirmative defense in either her Answer (ECF 18), or in the Pretrial Conference Order (ECF 155). The failure to assert it as an affirmative defense in the Answer results in a waiver of the defense. *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) ("Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived."); *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 663 n.3 (9th Cir. 1999) ("Ciarcia did not plead the affirmative defense of the statute of limitation in his answer. We recognize that failure to raise the statute of limitation as an affirmative defense constitutes waiver of the defense").

Even assuming it was asserted as an affirmative defense in the Answer the failure to include it in the Pretrial Order also results in a waiver. *Sram Corp. v. Shimano, Inc.*, 25 F. App'x 626, 629 (9th Cir. 2002) ("Where a defendant fails to raise the defense in a pretrial order or prior to trial, the defense is waived. See *Northwest Acceptance Corp. v. Lynnwood Equip.*,

-19-

*Inc.*, 841 F.2d 918, 924 (9th Cir.1988)"). *Dawe v. Corrections USA*, 506 F. App'x 657, 3 (9th Cir. 2013) ("Defendants argue that Harkins's defamation claim against California Correctional Peace Officers Association (CCPOA) was barred by the statute of limitations. However, the statute-of-limitations defense was not properly preserved in the final pretrial order. ")

### B. The Copyright Registrations Are Not an Express Repudiation Required to Start the Running of the Statute of Limitations

Even assuming Basil did not waive the statute of limitations defense, the copyright registrations are not a "repudiation" of Stillwater's claim that Mathieson is a joint author.

As set forth in I, C *supra* the copyright registrations do not establish, and are not indicative of Radialchoice's belief, that Basil was the sole author of the DSR's. The RB provides no authority for the argument that copyright registrations filed on behalf of a party can be a repudiation of that party's copyright ownership and rights. None of the cases cited in the RB deal with this issue, or are even remotely supportive of Basil's argument.

In *Seven Arts Filmed Entm't Ltd. v. Content Media Corp.*, 733 F.3d 1251 (9th Cir. 2013) Plaintiff's predecessor sent letters to defendant's predecessor claiming ownership of the copyright in the work at issue and making demand for payment of monies generated. *Id* at 1257. The claim

-20-

and demand were expressly rejected by defendant's predecessor more than three years prior to commencement of the action resulting in dismissal for lapse of the statute of limitations. *Id*.

The RB cites to *Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996). In *Zuill* defendant expressly repudiated plaintiff's copyright claim when he sent a royalty agreement, rejected on the basis of the computation of royalties, stating defendant was the sole owner of the copyright in the work at issue, and by sending a copy of the work at issue with a printed copyright notice in defendant's sole name. As both occurred more than three years prior to the commencement of the action it was barred by the statute of limitations. *Id* at 1371.

Finally, in *Consumer Health Info. Corp. v. Amylin Pharms., Inc.,* 819 F.3d 992 (7th Cir. 2016), a Seventh Circuit decision, plaintiff sought to rescind an agreement as "induced by fraud or economic distress" containing an assignment of the copyright in the work at issue to defendant. *Id* at 993. In addition to finding that the claim for rescission was barred by the applicable statute of limitations it found plaintiff's claim for copyright infringement was barred. *Id*. It found the gist the claim was copyright ownership, that under the circumstances the copyright assignment was a

repudiation of plaintiff's claim of copyright ownership, and it was not brought within three years of the agreement. *Id* at 997.

There is no claim that Basil or any of her representatives repudiated Stillwater's co-ownership prior to this action. Without a "plain and express repudiation" the copyright statute of limitations cannot commence. *Zuill supra* at 1369.

## CONCLUSION

The Court should modify the Findings of Fact and Conclusions of Law to provide that on Stillwater's first claim only 50% of the copyrights in the DSR's revert to Basil. It should remand the matter for entry of a new judgment in the amount of 50% of that previously awarded, or $48,347.50, together with such other and further relief as the Court deems appropriate.

Dated: February 8, 2022

/s/ Anthony Motta
ANTHONY MOTTA
*Attorney for Plaintiff-Counter-Claim-Defendant-Appellant*
64 Fulton Street, # 305
New York, N.Y. 10038
Telephone: (914) 589-5356
Facsimile: (332) 777-1875
E-mail: amotta@anthonymotta.com

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMIT

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32-1 because:

   This brief contains 4,667 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in proportionally-space typeface in Times New Roman, Font Size 14

Dated: February 8, 2022

/s/Anthony Motta_____
Anthony Motta

-23-

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2022, I electronically filed the foregoing Reply Brief for Plaintiff-Counter-Claim-Defendant-Appellant with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated: February 8, 2022

/s/ Anthony Motta

-24-